UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Jacquelyn Mares, M.D.** <br> **4915 Augusta Square** <br> **San Antonio, TX 78247** | : <br> : <br> : <br> : | Case No. 3:20CV00453 <br> <br> Judge |
| **Plaintiff,** | : <br> : | |
| v. | : <br> : | |
| **MIAMI VALLEY HOSPITAL** <br> **One Wyoming Street** <br> **Dayton, Ohio 45409** | : <br> : <br> : <br> : | |
| and | : <br> : | |
| **PREMIER HEALTH PARTNERS** <br> **One Wyoming Street** <br> **Dayton, Ohio 45409** | : <br> : <br> : <br> : | |
| and | : <br> : | |
| **WRIGHT STATE UNIVERSITY** <br> **d.b.a BOONSHOFT SHOOL OF** <br> **MEDICINE** <br> **725 University Blvd** <br> **Dayton, Ohio 45435** | : <br> : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| **JEROME L. YAKLIC, M.D.** <br> **400 Sugar Camp Circle, Suite 101** <br> **Dayton, Ohio 45409** | : <br> : <br> : <br> : | |
| and | : <br> : | |
| **G. THEODORE TALBOT, M.D.** <br> **400 Sugar Camp Circle, Suite 101** <br> **Dayton, Ohio 45409** | : <br> : <br> : <br> : | |
| and | : <br> : | |

| | |
|---|---|
| **ALBERT F. PAINTER, PSY.D.** | : |
| **3640 Colonel Glenn Hwy.** | : |
| **Dayton, OH 45435** | : |
| | : |
| **Defendants.** | : |
| | : |
| | : |

_____

# COMPLAINT AND JURY DEMAND
_____

For her complaint against Defendants, Miami Valley Hospital ("MVH"), Premier Health Partners ("PHP"), Wright State University ("WSU"), Jerome L. Yaklic, M.D. ("Dr. Yaklic"), G. Theodore Talbot, M.D. ("Dr. Talbot"), and Albert F. Painter, Psy.D. ("Dr. Painter"), Plaintiff Jacquelyn Mares, M.D. ("Dr. Mares") states as follows:

## I. Preliminary Statement

1. This action arises from the decision of Defendants to dismiss Dr. Mares from the Wright State University Obstetrics and Gynecology Program ("The Program") after she expressed an unwillingness to take a board certification exam in the subject area of her residency. Because the percentage of graduate students who take the examination is critical to maintaining the program's accreditation, Defendants dismissed Dr. Mares even though she had completed three years of her residency, was in good academic standing, was scheduled to graduate at the end of the current term, and even after a properly constituted panel of faculty recommended that she not be dismissed.

2. In determining to go forward with Dr. Mares' dismissal from the Program, Defendants violated her constitutional rights to procedural and substantive due process in violation of the Fourteenth Amendment of the United States Constitution as well as the terms and conditions of the Resident-Fellow Agreement, dated July 1, 2016 ("Exhibit A"

2

attached hereto) and her Graduate Medical Educational Agreement, dated June 15, 2016 ("Exhibit B").

3. This action is brought pursuant to 42 U.S.C., § 1983 and the common law of the state of Ohio.

4. Dr. Mares seeks relief in the form of prospective injunctive relief reinstating her to the Program, compensatory damages, punitive damages, and an award of her reasonable attorney's fees and costs in prosecuting this action.

## II. Jurisdiction and Venue

5. This Court has original subject-matter jurisdiction over this complaint pursuant to 28 U.S.C. § 1331.

6. This Court may exercise supplemental jurisdiction over Dr. Mares state law claims pursuant to 28 U.S.C § 1367 because these claims derive from the same nucleus of operative facts as her federal claims.

7. Venue is appropriate in this Court because the actions giving rise to this complaint occurred within the Southern District of Ohio.

## III. Parties

8. Plaintiff Jacquelyn Mares, M.D. is a United States citizen who resides in Bexar County, Texas.

9. Defendant Wright State University, d.b.a. Boonshoft School of Medicine ("WSU") is a public educational institution and an instrument of the state of Ohio. WSU supports and participates in the operation of The Program in collaboration with MVH and PHP.

10. Defendant Miami Valley Hospital ("MVH") is an Ohio not-for-profit corporation which operates and maintains a healthcare facility in Montgomery County Ohio.

11. Defendant Premier Health Partners ("PHP") is a private not-for-profit corporation which owns and operates a healthcare network consisting of three hospitals including MVH.

12. Defendant Theodore Talbot, M.D. ("Dr. Talbot") is or was at all times relevant hereto an employee of and Residency Director of WSU who participated in decisions affecting resident physicians participation in the Program. Dr. Talbot is sued in his official and individual capacities.

13. Defendant Jerome Yaklic, M.D. ("Dr. Yaklic") is or was at all times relevant hereto an employee of WSU and Chair of its Department of Obstetrics and Gynecology. In that capacity Dr. Yaklic made or participated in decisions affecting resident physicians participation in the Program. Dr. Yaklic is sued in his official and individual capacities.

14. Defendant Albert F. Painter, Psy.D. ("Dr. Painter") is or was at all times relevant hereto an employee and Associate Director of Medical Affairs at WSU. In such capacity Dr. Painter made or participated in decisions affecting resident physicians participation in the Program. Dr. Painter is sued in his official and individual capacities.

### IV. Statement of the Case

15. Dr. Mares was employed by MVH as a resident-fellow in the Wright State University Obstetrics and Gynecology Program pursuant to the terms and conditions of the Resident-Fellow Agreement ("Agreement"), effective July 1, 2016, and the Graduate

4

Medical Education Agreement, effective June 15, 2016. Copies of these Agreements are marked Exhibit A and B, respectively, attached hereto and incorporated herein.

16. Included in and made a part of the Agreements is Item 504 of the Wright State University Boonshoft School of Medicine Resident Program Manual ("Item 504"). A copy of Item 504 is marked Exhibit C, attached hereto and incorporated herein.

17. On or about December 3, 2018, Margaret Dunn, M.D., Dean of the Boonshoft School of Medicine on behalf of WSU and Theresa W. Zryd, M.D., Vice President of Academic Affairs on behalf of MVH advised Dr. Mares that they were rejecting the recommendation of the review panel to retain Dr. Mares in the Program and were affirming the recommendation from Dr. Yaklic, Dr. Talbot, and Dr. Painter to dismiss Dr. Mares from the Program.

18. According to Dr. Dunn and Dr. Zryd their decision was based upon Dr. Mares' "persistent demonstration of unprofessional and insubordinate behavior as well as concerns regarding her deficiencies in critical communication obligations and entering incorrect information in a patient safety report."

19. The foregoing explanation of Dr. Mares' termination from the Program was false. In fact, the decision to dismiss Dr. Mares was stemmed from the fact that she had refused to agree to sit for a certification board examination in Obstetrics and Gynecology ("OBGYN"). By eliminating Dr. Mares from the Program, Defendants artificially enhanced the Program's performance under a statistical institutional standard established and enforced by the Accreditation Council for Graduate Medical Education ("ACGME"). That standard required at least eighty percent of the Program's graduating class to take the certification boards in OBGYN. Defendants feared that Dr. Mares' choice

not to sit for the board examination jeopardized the Program's ability to meet the statistical threshold ("the take rate"), and thus its ability to maintain accreditation. Hence the incentive to prevent Dr. Mares from graduating from the Program.

20. To mask their motivation for the decision to dismiss Dr. Mares and to serve as a pretext for their inappropriate conduct, Dr. Painter, Dr. Yaklic, and Dr. Talbot concocted a false narrative that Dr. Mares had failed to demonstrate satisfactory progress throughout her residency, primarily in the areas of professionalism and interpersonal communication skills with staff, residents, and attending physicians. In fact, and contrary to the official grounds offered by Defendants for her termination, Dr. Mares had met or exceeded official standards governing her continued enrollment in and entitlement to complete the Program.

21. In furtherance of their efforts to conceal the true reasons for their decision to dismiss Dr. Mares from the Program, Defendants Dr. Painter, Dr. Yaklic, and Dr. Talbot portrayed Dr. Mares as an individual suffering from "physician burnout." Physician burnout constitutes a physical and emotional condition that substantially limits the major life activities of mental acuity and mood lability. According to the Resident Program Manual and the ACGME, the symptoms of fatigue and/or stress associated with physician burnout include mood swings, interpersonal conflict, and malaise of the exact nature witnessed and objected to by Defendants. Despite Defendants' contractual obligation to address and attempt to ameliorate Dr. Mares' manifestations of "physician burnout," Defendants exploited Dr. Mares' condition as an excuse to dismiss her; falsely claiming that on account of her condition, she lacked professionalism and the ability to

satisfactorily engage in level of interpersonal communications necessary to succeed in the Program.

22. Dr. Mares then challenged the decision that she be dismissed by availing herself of her contractual right to due process under the provisions of Item 504. Dr. Mares' appeal of the decision to dismiss her was held before a panel consisting of neutral physicians who, following an evidentiary hearing, determined that dismissal was not supported by substantial evidence and recommended to Defendants that Dr. Mares remain in the Program until her graduation, subject to conditions detailed by the panel.

23. The aforementioned actions of Defendants, taken in the manner and for the reasons previously described, were committed, or omitted as the case may be, intentionally, maliciously, and purposefully with a callous and reckless indifference to Dr. Mares' constitutional right not to be deprived of her property interest in continued enrollment and participation in the Program in the absence of procedural and substantive due process.

24. As a direct and proximate result of the actions of Defendants, taken for the manner and for the reasons previously described, Dr. Mares suffered and continues to suffer economic damages, as well as non-economic damages for her emotional pain and suffering and injury to her professional reputation.

## V. STATEMENT OF THE CLAIMS

### Count 1: Procedural Due Process

25. Plaintiff incorporates paragraphs 1-24 as if fully rewritten herein.

26. Dr. Mares enjoyed a state created property right to continued enrollment in the Program and to continued employment as a resident-physician.

27. Defendants denied Dr. Mares the value of that property interest when they ignored the hearing committee's recommendation following an evidentiary hearing that there was insufficient evidence to support her termination from the Program.

28. Defendants' actions in this regard violated Dr. Mares' right to procedural due process under the Fourteenth Amendment to the United States Constitution.

### Count 2: Substantive Due Process

29. Plaintiff incorporates paragraphs 1-28 as if fully rewritten herein.

30. The decision to terminate Dr. Mares' employment and her enrollment as a resident-physician in the Program was arbitrary, capricious, and rested upon considerations that had not been adopted as official standards or criteria for continued enrollment or participation in the Program as set forth in or made a part of the Agreement or the Graduate Medical Education Agreement.

### Count 3: Breach of Contract (Employment)

31. Plaintiff incorporates paragraphs 1-30 as if fully rewritten herein.

32. The actions of the institutional Defendants WSU, PHP, and MVH in terminating Dr. Mares from the Program in the manner and for the reasons previously described, constituted a breach in the of the Agreement.

### Count 4: Breach of Contract (Enrollment)

33. Plaintiff incorporates paragraphs 1-32 as if fully rewritten herein.

34. The actions of the institutional Defendants WSU, PHP, and MVH constitutes a breach of the WSU Boonshoft School of Medicine Graduate Medical Education Agreement.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Jacquelyn Mares, M.D. demands judgment against Defendants as follows:

1. For an award of prospective injunctive relief against WSU, MVH, and PHP reinstating Dr. Mares into the Program as a fourth-year resident physician;

2. For an award of compensatory damages against Defendants Dr. Yaklic, Dr. Talbot, and Dr. Painter for non-economic injuries suffered by Dr. Mares in an amount to be determined at trial;

3. For an award of punitive damages against Defendants Dr. Yaklic, Dr. Talbot, and Dr. Painter in an amount to be determined at trial;

4. For an award for Dr. Mares reasonable attorney's fees and costs incurred in prosecuting this action;

5. For an award of such other relief in law or equity that is appropriate under the premises.

Respectfully submitted,

MEZIBOV BUTLER

/s/Marc D. Mezibov
Marc D. Mezibov (OH No. 0019316)
615 Elsinore Place, Suite 105
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
mmezibov@mezibov.com

Sherman Marek, Esq.
55 East Monroe St., Suite 3800
Chicago, IL 60603
Phone: 312.470.7662
smarek@marekweisman.com
(to be admitted *pro hac vice*)

*Attorneys for Plaintiff Jacquelyn Mares, M.D.*

## JURY DEMAND

Plaintiff Jacquelyn Mares, M.D., demands a jury trial to resolve issues of fact related to her Complaint.

/s/Marc D. Mezibov
Marc D. Mezibov (Ohio No. 0019316)