IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JACQUELYN MARES, M.D.,

          Plaintiff,

-vs-

MIAMI VALLEY HOSPITAL, *et al.*,

          Defendants.

Case No. 3:20-CV-00453

JUDGE NEWMAN

**MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANTS
WRIGHT STATE UNIVERSITY d.b.a. BOONSHOFT SCHOOL OF MEDICINE,
JEROME YAKLIC, M.D., G. THEODORE TALBOT, M.D.,
AND ALBERT F. PAINTER, PSY.D.**

Now come Defendants Wright State University d.b.a. Boonshoft School of Medicine, Jerome Yaklic, M.D., G. Theodore Talbot, M.D., and Albert F. Painter, Psy.D. (together, the "WSU Defendants"), by and through counsel, and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, respectfully request that Plaintiff Jacquelyn Mares, M.D.'s Complaint be dismissed in its entirety against the WSU Defendants.

Section 1983 claims against the State and its agencies are barred by the Eleventh Amendment, as are Plaintiff's claims against State officials in their official capacity.  Even if Plaintiff's claims are analyzed under the narrow exception of *Ex Parte Young*, they do not survive.  With respect to Plaintiff's substantive due process claim, Plaintiff has not pleaded a violation of a fundamental right or conduct that "shocks the conscience."  With respect to Plaintiff's procedural due process claim, she admittedly received a full pre-termination evidentiary hearing.  Her only procedural due process argument appears to be the decision makers rejected the panel's recommendation, which is no due process violation at all.  Accordingly, her due process claims are without merit.

Furthermore, Plaintiff's state law claims asserted against State entities are barred in this Court by sovereign immunity, and by R.C. § 9.86. For these reasons and those more fully detailed in the attached Memorandum of Law in Support, the WSU Defendants respectfully request that the Court grant their Motion for Judgment on the Pleadings and dismiss Plaintiff's Complaint against them in its entirety.

## MEMORANDUM OF LAW IN SUPPORT

### I. PROCEDURAL HISTORY

On February 10, 2021, the WSU Defendants moved for judgment on the pleadings on all claims asserted against them. (Doc. 7). On March 18, 2021, Defendants Miami Valley Hospital and Premier Health Partners moved for partial judgment on the pleadings on Counts 1, 2, and 4. (Doc. 11). On April 8, 2021, Plaintiff filed a consolidated response to both motions. (Doc. 13). The two groups of Defendants filed their respective replies on April 22, 2021. (Docs. 15, 16).

On June 21, 2021, this case was referred to Magistrate Judge Ovington for purposes of mediation. (Doc. 19). On September 28 and 30, 2021, this Court denied the two pending motions for judgment on the pleadings without prejudice to allow the mediation process to play out. (Docs. 22, 23). Both orders stated that the "Defendants may refile their motion if this case is not resolved through mediation." *Id.* The case was not resolved through mediation, and the WSU Defendants now refile their nearly identical motion for judgment on the pleadings that they previously filed on February 10, 2021. (Doc. 7). The only edit/addition is the inclusion of this section regarding procedural history.

It also bears mentioning that, based upon the last round of briefing, it appears Plaintiff is no longer pursuing Counts 3 (Breach of Contract – Employment) and 4 (Breach of Contract – Enrollment) against the WSU Defendants for the simple reason that she did not address these

claims in her memo contra. This was previously addressed in the WSU Defendants' reply. (Doc. 16, p. 8, PAGEID#124).

## II. INTRODUCTION

Plaintiff, Dr. Jacquelyn Mares, was a resident-fellow in the Obstetrics and Gynecology Program (the "Program") of Defendants Wright State University ("WSU") and Miami Valley Hospital ("MVH"). (Comp't ¶¶ 1, 15.) On or about December 3, 2018, WSU and MVH notified Dr. Mares of her dismissal from the Program because of her "persistent demonstration of unprofessional and insubordinate behavior as well as concerns regarding her deficiencies in critical communication obligations and entering incorrect information in a patient safety report." (Comp't ¶¶ 17-18.) Dr. Mares contends that this characterization of her performance is false, and that at the time of her dismissal, she "had completed three years of her residency, was in good academic standing," and "was scheduled to graduate at the end of the current term." (Comp't ¶ 1.)

Dr. Mares believes that she was targeted unfairly for dismissal by the individual Defendants -- Drs. Talbot, Yaklic, and Painter -- who were the Program's Residency Director, the Chair of Obstetrics and Gynecology, and the Associate Director of Medical Affairs, respectively. (Comp't ¶¶ 12-14.) Dr. Mares alleges that she was dismissed because she had "expressed an unwillingness to take a board certification exam in the subject area of her residency," *i.e.*, obstetrics and gynecology. (Comp't ¶ 1.) Drs. Talbot, Yaklic, and Painter allegedly "feared that Dr. Mares's choice not to sit for the board examination jeopardized the Program's ability to meet the statistical threshold ('the take rate')" necessary to maintain the Program's accreditation from the Accreditation Council for Graduate Medical Education ("ACGME"). (Comp't ¶ 19.)

3

Dr. Mares challenged the recommendation of Drs. Talbot, Yaklic, and Painter before a "panel consisting of neutral physicians" who conducted a full "evidentiary hearing." (Comp't ¶ 22). Dr. Mares concedes that she "avail[ed] herself of her contractual right to due process under the provisions of Item 504." *Id.* (Item 504 of the Wright State University School of Medicine Resident Program Manual, entitled "Academic and Professional Standards / Due Process," is attached to Plaintiff's Complaint as Exhibit C (Doc. 1-3, PAGEID#18-21)).

The panel recommended that Dr. Mares remain in the Program until her graduation, subject to certain conditions. (Comp't ¶ 22.) After the hearing, Margaret Dunn, M.D., Dean of WSU's Boonshoft School of Medicine, and Theresa W. Zryd, M.D., Vice President of Academic Affairs, notified Dr. Mares that "they were rejecting the recommendation of the review panel to retain Dr. Mares in the Program and were affirming the recommendation from Dr. Yaklic, Dr. Talbot, and Dr. Painter to dismiss Dr. Mares from the Program." (Comp't ¶ 17.) This panel rejection is fully contemplated by the processes set forth in Item 504. (Doc. 1-3, PAGEID#21, Paragraph 6.)

On November 5, 2020, Dr. Mares filed a Complaint (Doc. 1) against Defendants Miami Valley Hospital, Premier Health Partners, WSU, and Drs. Talbot, Yaklic, and Painter (in both their individual and official capacities). (*See* Comp't ¶¶ 9-14.) Dr. Mares asserts four causes of action against all Defendants:

- Count I alleges a violation of procedural due process, pursuant to 42 U.S.C. § 1983. (Comp't ¶¶ 2-3, 25-28.)

- Count II alleges a violation of substantive due process, pursuant to 42 U.S.C. § 1983. (Comp't ¶¶ 2-3, 29-30.)

- Count III alleges a breach of Dr. Mares's contract of employment under Ohio state law. (Comp't ¶¶ 2-3, 31-32.)

- Count IV alleges a breach of Dr. Mares's contract of enrollment in her residency program. (Comp't ¶¶ 2-3, 33-34.)

Plaintiff filed her § 1983 claims against WSU, and Drs. Yaklic, Talbot, and Painter, in their official capacities,[1] even though it is well-settled law that these Defendants are immune from such a lawsuit. Moreover, both Section 1983 claims fail to state a claim for relief. Plaintiff has also filed breach of contract claims under Ohio law against the WSU Defendants, even though they are all immune from suit for state law claims filed in federal court. Accordingly, the WSU Defendants respectfully request that all of Plaintiff's claims be dismissed.

## II.    LAW AND ARGUMENT

### A.    <u>Standard of Review.</u>

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but early enough not to delay trial, a party may move for judgment on the pleadings." "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. Cleveland Civil Service Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001) (*citing Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)). To survive a motion to dismiss, a plaintiff must plead facts that, when accepted as true,

---

[1] Plaintiff's Complaint states that she is suing all three individual defendants in both their official and individual capacities. (Comp't, ¶¶ 12-14.)

"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff cannot plead facts "that are 'merely consistent with' a defendant's liability," or assert only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements. Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679 (*quoting Twombly*, 550 U.S. at 555-57).

### B. Counts I and II of the Complaint Should be Dismissed Against the WSU Defendants Because of Sovereign Immunity and for Failure to State a Claim.

In Counts I and II of the Complaint, Dr. Mares alleges that the WSU Defendants violated her substantive due process and procedural due process rights under the Fourteenth Amendment to the U.S. Constitution. (Comp't, ¶¶ 2-3.) Dr. Mares seeks judicial redress for these alleged violations under the federal Civil Rights Act of 1871, codified in relevant part as 42 U.S.C. § 1983, which states in pertinent part:

> Every ***person*** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . (emphasis added)

Plaintiff fails to state a valid claim against the WSU Defendants for a straightforward reason: sovereign immunity under the Eleventh Amendment to the U.S. Constitution prohibits damages actions against a State in federal court. *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018). Moreover, absent waiver or consent by the state, the Eleventh Amendment also bars suits for money damages against a state official in his or her official capacity since "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Sovereign immunity extends to "state agents and instrumentalities" such as public universities, *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429, (1997), and to state officials sued in their official capacities. *Maben,* 887 F.3d at 270. WSU is funded by the State, is considered "an arm of the state," and is accordingly entitled to sovereign immunity. *See, e.g., Dvorak v. Wright State Univ.,* S.D. Ohio Case No. C-3-96-109, 1997 U.S. Dist. LEXIS 23804, at *21 (Sep. 2, 1997). Dr. Mares admits as much in her Complaint: "Defendant Wright State University, d.b.a. Boonshoft School of Medicine . . . is a public educational institution and an instrument of the state of Ohio." (Comp't ¶ 9.) The Eleventh Amendment bars Plaintiff from suing WSU, or its officials in their official capacities, in federal court.

Plaintiff's reliance on 42 U.S.C. § 1983 does not defeat the Eleventh Amendment bar. Congress did not abrogate the States' sovereign immunity when it enacted 42 U.S.C. § 1983. *Will*, 491 U.S. at 66 (*citing Quern v. Jordan*, 440 U.S. 332, 345 (1979); *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992). It is black letter law that the Eleventh Amendment bars Section 1983 suits against the State or state agencies. *See, Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009) (*citing Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).

Even if Congress *had* abrogated state sovereign immunity for Section 1983 claims, Plaintiffs claims would still fail because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. WSU and Drs. Yaklic, Talbot, and Painter, in their official capacities, are not "persons" that may be sued for money damages under Section 1983. Accordingly, Defendants respectfully request that Counts I and II be dismissed as to WSU in their entirety, and as to Drs. Yaklic, Talbot, and Painter in their official capacities.

    1.    The *Ex Parte Young* Exception Does Not Apply.

The U.S. Supreme Court has recognized a narrow exception to Eleventh Amendment

sovereign immunity for lawsuits against government officials in their official capacities, if a plaintiff seeks only non-monetary relief. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908). The *Ex Parte Young* exception exists "to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (quoting *Ex Parte Young*, 209 U.S. at 160). Although *Ex Parte Young* "permits suits for prospective relief against the individual Defendants in their official capacities, it does not extend to actions for injunctive relief sought against the arms of the State" *i.e.*, against WSU. *McAllister v. Kent State Univ.*, 454 F.Supp.3d 709, 717 (N.D. Ohio 2020) (citations omitted). The Eleventh Amendment bars Dr. Mares's claims against WSU.

A plaintiff suing a defendant in his official capacity may only "seek prospective relief to end a continuing violation of federal law." *Doe v. Wright State Univ.,* S.D. Ohio No. 3:16-cv-469, 2017 U.S. Dist. LEXIS 136225, at *11 (Aug. 24, 2017) (citing *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2014)). Courts have held that reinstatement to an academic program is a form of prospective relief that is appropriate to seek under *Ex Parte Young*. *See, e.g., Carten v. Kent State Univ.,* 282 F.3d 391, 396 (6th Cir. 2002); *Saqr v. Univ. of Cincinnati*, S.D. Ohio No. 1:18-cv-542, 2019 U.S. Dist. LEXIS 26467, at *41 (Feb. 20, 2019), R&R adopted, 2019 U.S. Dist. LEXIS 41137 (S.D. Ohio, Mar. 14, 2019). Accordingly, Plaintiff could pursue *Ex Parte Young* claims against the individual Defendants in their official capacities. However, as set forth *infra*, Plaintiff's complaint fails to state a claim for a due process violation.

> 2. <u>Dr. Mares Fails to State a Procedural Due Process Claim.</u>

Other than her *Ex Parte Young* claims against the individual Defendants in their official capacities, Plaintiff's only remaining claims in Counts I and II are against Drs. Yaklic, Talbot, and Painter in their individual capacities. "The Eleventh Amendment . . . does not bar suits for

8

damages against officers in their personal capacity under § 1983." *Maben*, 887 F.3d at 270 (*citing Hafer v. Melo*, 502 U.S. 21, 25-27, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)). Plaintiff's procedural due process claim should be dismissed in its entirety because she has failed to state a claim for relief.

In Count I, Plaintiff alleges that the WSU Defendants violated her procedural due process rights by denying "Dr. Mares the value of that property interest when they ignored the hearing committee's recommendation following an evidentiary hearing that there was insufficient evidence to support her termination from the Program." (Comp't, ¶ 27.) **Plaintiff unmistakably concedes that she received a full pre-deprivation evidentiary hearing prior to removal.** Thus, she cannot state a claim because she was afforded all the process that she was due.

In order to establish her procedural due process claim, Plaintiff must show that: "(1) she had a life, liberty, or property interest protected by the Due Process Clause; (2) she was deprived of this protected interest; and (3) the state did not afford her adequate procedural rights prior to depriving him of the property interest." *McKenna v. Bowling Green State Univ.*, 568 Fed. Appx. 450, 457 (6th Cir. 2014) (citations omitted). Assuming *arguendo* that Dr. Mares had a protected property interest in her participation in the Program,[2] and that she was deprived of such interest, her claims still fails for two fundamental reasons.

First, Dr. Mares appears to concede that she received a pre-termination hearing that *exceeded* any Constitutional requirements. Dr. Mares was given all the process that she was due. After Drs. Talbot, Yaklic, and Painter recommended Dr. Mares's removal, WSU impaneled a committee to hear her appeal pursuant to Item 504. Dr. Mares appeared in front of the

---

[2] As this Court has observed, "it is not entirely settled in the Sixth Circuit as to whether a student's continued enrollment at a state university is an interest protected by procedural due process." *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 U.S. Dist. LEXIS 155291, *37 (S.D. Ohio Nov. 17, 2015) (collecting cases).

9

committee, which conducted a full evidentiary hearing. It is undisputed that Dr. Mares was "given some kind of notice and afforded some kind of hearing," which is all that procedural due process requires. *Goss v. Lopez*, 419 U.S. 565, 576 (1975). The Sixth Circuit has analyzed a procedural due process challenge to a medical school's disciplinary process for an expelled medical student, and made it clear that perfection is not required under the law. *See Flaim v. Med. Coll. of Ohio,* 418 F.3d 629, 637 (6th Cir. 2014) (procedures "were far from ideal and certainly could have been better[, but] they were in the end … fundamentally fair.").

Dr. Mares's sole procedural due process argument appears to be that WSU's dismissal decision was illegitimate because Dr. Dunn and Dr. Zryd did not follow the hearing panel's recommendation. This is irrelevant to any procedural due process analysis. The Court does not ask to what procedures an employee was or was not arguably entitled under state law, local ordinances, or, employer policy. Rather, courts look at what process the plaintiff actually received and ask whether it was sufficient to satisfy the Constitution. *See McKenna*, 568 Fed. Appx. at 457-58. In this case, the pre-termination process was sufficient. WSU was not obligated to implement the recommendation of the hearing panel. *See, e.g., Kunz v. Franklin City School Dist. Bd. of Edn*., S.D. Ohio No. 1:06-CV-012, 2007 U.S. Dist. LEXIS 71429, at *13-14 (Sep. 26, 2007) (employer "more than satisfied the minimal *Loudermill* requirements" when it held an evidentiary hearing before terminating an employment contract, even though the Board rejected the recommendation of the hearing referee); *Manning v. Clermont Cty. Bd. of Commrs.*, 55 Ohio App.3d 177, 182, 563 N.E.2d 372 (12th Dist. 1989) ("Although [the hearing officer] recommended that he receive a three-day suspension, the board rejected that recommendation and decided discharge was appropriate. This decision was within their discretion and was supported by the evidence at the hearing. [The employee] was given notice

that discharge was possible prior to the hearing and was able to present his 'defense' on that basis. Moreover, the decision to terminate his employment was clearly made immediately following the post-termination hearing"). Theses cases make it clear: the focus is on the process provided to the individual -- not the final outcome.

Second, Dr. Mares's claim fails because, to establish liability against the individual defendants, she "must show that his or her own rights were violated, and that the violation was committed *personally* by the defendant." *Robertson v. Lucas*, No. 12-3877, 753 F.3d 606, 2014 U.S. App. LEXIS 9771, *17 (6th Cir. 2014); *see also, Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (emphasizing that in a § 1983 suit, "[e]ach defendant's liability must be assessed individually based on his own actions"). As stated in the Complaint, the only conduct arguably committed by Drs. Talbot, Yaklic, and Painter was *recommending* that Dr. Mares be dismissed from the program. (Comp't, ¶ 17.) They did not reject the recommendation of the hearing panel (which, Defendants reiterate, appears to be Plaintiff's only procedural due process argument). None of the individually named Defendants engaged in the purportedly unlawful conduct.

### 3. Dr. Mares Fails to State a Substantive Due Process Claim.

In Count II, Plaintiff alleges that the WSU Defendants violated her substantive due process rights because the "decision to terminate Dr. Mares' employment and her enrollment as a resident-physician in the Program was arbitrary, capricious, and rested upon considerations that had not been adopted as official standards or criteria for continued enrollment or participation in the Program as set forth in or made a part of the Agreement or the Graduate Medical Education Agreement." (Comp't, ¶ 30.) Dr. Mares's substantive due process claim fails because she has not alleged that the WSU Defendants violated a fundamental right or engaged in conduct that "shocks the conscience."

The Fourteenth Amendment "protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992). However, "[n]ot all arbitrary and capricious state action amounts to a violation of substantive due process; 'otherwise judicial review for compliance with substantive due process would become the equivalent of a typical state or federal Administrative Procedure Act.'" *Hussein v. City of Perrysburg*, 617 F.3d 828, 832 (6th Cir. 2010), quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 251 (6th Cir. 2003). Rather, "[s]ubstantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997) (citations omitted).[3]

Courts have been hesitant to enlarge substantive due process to include claims other than marriage, procreation, and the right to bodily integrity. *Albright v. Oliver*, 510 U.S. 266, 272 (1994). The U.S. Supreme Court has refrained from determining whether continued enrollment in a school is protected by substantive due process, and in cases discussing the issue, the Court has only assumed, *arguendo*, that such a fundamental right exists. *See, e.g., Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985); *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91-92 (1978). And the Court has emphasized the judiciary's limited review of academic decisions:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial

---

[3] "The first type includes claims asserting denial of a right, privilege, or immunity secured by the Constitution or by federal statute other than procedural claims under 'the Fourteenth Amendment simpliciter.'" *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993), quoting *Parratt v. Taylor*, 451 U.S. 527, 536 (1981). The second type serves "as a limitation on official misconduct which, although not infringing on a fundamental right," is so unjust that it shocks the conscience. *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). Accordingly, "the interests protected by substantive due process are . . . much narrower than those protected by procedural due process." *Bell*, 351 F.3d at 249-250.

> departure from accepted academic norms as to demonstrate that the person or committee responsible *did not actually exercise professional judgment.*

*Ewing,* 474 U.S. at 225 (emphasis added). In *Ewing*, a medical student failed part I of the "NBME" test that was required for him to proceed with his final two years of residency. After a review of his entire academic record, the University of Michigan dismissed him instead of allowing him to retake the test. The Court rejected his substantive due process claim, noting that courts are ill-suited to "evaluate the substance of the multitude of academic decisions that are made daily by faculty members of public educational institutions--decisions that require an expert evaluation of cumulative information and [are] not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Id*. at 226 (quotation omitted).

The Sixth Circuit Court of Appeals has gone further, concluding that absent an equal protection violation there is no substantive due process right to continued enrollment at a state university. *Bell*, 351 F.at 251. In *Bell,* the Court rejected the contention that "arbitrary or capricious" actions by a school were sufficient to state a substantive due process violation. *Id*. Subsequently, in an unpublished opinion, the Sixth Circuit held that a nursing student's "interest in her nursing education is not protected by substantive due process." *Rogers v. Tenn. Bd. of Regents*, 273 Fed. Appx. 458 (6th Cir. 2008). *See also, Martinson v. Regents of the Univ. of Michigan,* 562 Fed. Appx. 365, 375 (6th Cir. 2014) (following *Bell* to reject nursing student's substantive due process challenge to expulsion); *Hill v. Bd. of Trs. of Michigan State Univ*., 182 F.Supp.2d 621, 626-27 (W.D. Mich. 2001) ("The Sixth Circuit has recognized that the right to attend public high school is not a fundamental right for purposes of substantive due process analysis. The right to a public college education and the right to receive notice prior to suspension are *even less fundamental*.")

Here, Dr. Mares alleges only that she was denied continued participation in the Program; she does not plead a violation of any recognized fundamental right. Even if she could claim an interest in her continued enrollment that was protected by substantive due process, moreover, she was not denied that protection by the WSU Defendants. Courts have consistently held that academic dismissals can be based on more than objective grading criteria. Especially in the context of a professional program such as this one, "a student's competence to comply with the accepted standards of the profession are obviously important factors in assessing the student from an academic standpoint." *Yoder v. Univ. of Louisville,* W.D. Ky. No. 3:09-CV-00205, 2012 U.S. Dist. LEXIS 45264, at *26 (Mar. 30, 2012), citing *Ku v. Tennessee*, 322 F.3d 431, 436 (6th Cir. 2003) (recognizing that qualities such as student's ethical behavior and interpersonal relationships with medical colleagues, patients, and patients' families are relevant academic considerations); *Firester v. Bd. of Governors*, 1990 U.S. App. LEXIS 12167, 1990 WL 99493, at *3 (6th Cir. 1990) ("[P]roper attitudes toward patients are important factors in determining whether a student will be a good doctor."); *Shaboon v. Duncan*, 252 F.3d 722, 731 (5th Cir. 2001) (dismissal was academic where it was based on student's lack of "fitness to perform as a doctor") (further citations omitted).

In sum, Plaintiff has not alleged facts in her Complaint that, if true, would demonstrate that Defendants' conduct in dismissing her from the Program constituted unconstitutionally arbitrary action. Plaintiff's allegations, without more, are insufficient to assert a substantive due process claim. Defendants respectfully request that Count II of the Complaint be dismissed.

    **C.**     **Sovereign Immunity Bars Counts III and IV, Plaintiff's State Law Claims Asserted Against WSU and Individual Defendants in their Official Capacities Alleging Breach of Contract.**

Plaintiff's asserted breach of contract claims under Ohio law should be dismissed as to

14

WSU, and Drs. Talbot, Yaklic, and Painter in their official capacities, because they are immune from suit for state law claims.

Principles of sovereign immunity underlying the Eleventh Amendment bar federal court jurisdiction over pendent state law claims against unconsenting States, or state officials when the State is the real party in interest, regardless of the remedy sought. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 120-21 (1983). States may consent to be sued in federal court, thus waiving their immunity from damages. *Port Authority Trans-Hudson Corp. v. Seeney*, 495 U.S. 299, 304 (1990). The State of Ohio, however, has <u>not</u> consented to suit in federal court on state law causes of action. Article One, § 16, of the Ohio Constitution states: "Suits may be brought against the state, in such courts and in such manner, as may be provided by law," and O.R.C. § 2743.02 provides that unless otherwise authorized, suits against the State of Ohio may be brought in the Ohio Court of Claims only. *See Manning v. Ohio State Library Board*, 62 Ohio St.3d 24, 577 N.E. 2d 650 (1991). Based on the foregoing, the Sixth Circuit has held that the State of Ohio has waived its sovereign immunity only as to actions brought in the Court of Claims. *Leaman v. ODMRDD,* 825 F.2d 946, 954 (6th Cir. 1987) (*en banc*), *cert. denied*, 487 U.S. 1204 (1988); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). Because Ohio has not waived its sovereign immunity for state law claims, Defendants WSU and its employees (in their official capacity) are immune from suit in this Court on Plaintiff's breach of contract claims.

### D. **R.C. § 9.86 Bars Plaintiff's State Law Claims against the Individual Defendants in their Individual Capacities.**

Plaintiff's breach of contract claims against Drs. Talbot, Yaklic, and Painter in their individual capacities should also be dismissed because the claims are barred by R.C. § 9.86 immunity. R.C. § 9.86 provides, in relevant part:

15

> [N]o officer or employee shall be liable *in any civil action that arises under the law of this state* for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

(Emphasis added). Although R.C. § 9.86 provides a limited exception to immunity for state officers and employees when their actions are manifestly outside the scope of their employment or official responsibilities, or the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner, **the determination of immunity is exclusively reserved for the Court of Claims**. *See* R.C. § 2743.02(F) (such claims "shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.") As the Ohio Supreme Court recognized in *Conley v. Shearer*, 64 Ohio St.3d 284, 288 (1992), R.C. § 2743.02(F) vests "exclusive original jurisdiction in the Court of Claims" to determine whether State officers or employees are immune under R.C. § 9.86. Thus, a federal court is without jurisdiction to consider a state law claim that has not first been brought in the Court of Claims.

Because Plaintiff has not first raised her state law breach of contract claims against Drs. Talbot, Yaklic, and Painter in the Court of Claims, this court is without jurisdiction to consider those claims. Therefore, the WSU Defendants respectfully request that Counts III and IV be dismissed as to these defendants in their individual capacities.

### III. CONCLUSION

Sovereign immunity bars Plaintiff's Section 1983 claims against the WSU Defendants, except her "due process" claims against the individual Defendants in their official capacities (which survive under *Ex Parte Young*). Plaintiff's Section 1983 claims against the individual

Defendants in their individual capacity are not barred by immunity; however, Plaintiff fails to state a claim with respect to those causes of action. Plaintiff's procedural due process claim fails because she concedes that she received all of the process that she was due. Also, it is well-settled that continued enrollment in a medical residency program is not a "fundamental right" protected by substantive due process. And even if it were, Plaintiff has not alleged unconstitutionally arbitrary action. Finally, Plaintiff's state law claims are barred in this Court by sovereign immunity as embedded in the Eleventh Amendment, as well as by R.C. § 9.86. Accordingly, the WSU Defendants respectfully request that Plaintiff's Complaint be dismissed against them in its entirety.

Respectfully Submitted,

DAVE YOST (0056290)
Attorney General of Ohio

*/s/ Drew C. Piersall*

Drew C. Piersall (0078085)
 dcp@zrlaw.com
Scott H. DeHart (0095463)
 shd@zrlaw.com
Zashin & Rich Co., L.P.A.
17 South High Street, Suite 900
Columbus, Ohio 43215
Telephone: (614) 224-4411
Facsimile: (614) 224-4433

*Attorneys for Defendants,
Wright State University d.b.a. Boonshoft
School of Medicine, Jerome Yaklic, M.D.,
G. Theodore Talbot, M.D., and Albert F.
Painter, Psy.D.*

## **CERTIFICATE OF SERVICE**

This will certify that the foregoing was filed electronically on November 19, 2021. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Drew C. Piersall*

Drew C. Piersall (0078085)
Zashin & Rich Co., L.P.A.