UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **JACQUELYN MARES, M.D.,** ) | |
| ) | Civil Action No. 3:20-cv-00453 |
| **Plaintiff,** ) | |
| ) | Judge Michael J. Newman |
| v. ) | |
| ) | |
| **MIAMI VALLEY HOSPITAL, et al.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS
MIAMI VALLEY HOSPITAL AND PREMIER HEALTH PARTNERS**

Now come the Defendants Miami Valley Hospital ("MVH") and Premier Health Partners ("PHP") (together the "MVH Defendants"), and hereby move this Court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure ("Civil Rules") for entry of summary judgment on each of the claims against them.  The grounds for this Motion are detailed in the attached Memorandum.

Respectfully submitted,

*/s/ Karen T. Dunlevey*
Karen T. Dunlevey (0067056), Trial Attorney
JACKSON LEWIS P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, OH 45202
Telephone: (937) 949-3846
Facsimile: (513) 898-0051
Karen.Dunlevey@jacksonlewis.com

*Counsel for Defendants Miami Valley Hospital
and Premier Health Partners*

**MEMORANDUM**

## I. INTRODUCTION

Plaintiff Jacquelyn Mares, M.D. ("Dr. Mares") was properly dismissed from a medical residency program because she failed to demonstrate the requisite professionalism expected of a resident physician. This case arises out of that dismissal.

Dr. Mares asserts four claims against the MVH Defendants: (1) violation of constitutional right to procedural due process under the Fourteenth Amendment; (2) violation of constitutional right to substantive due process under the Fourteenth Amendment; (3) state law breach of employment contract; and (4) state law breach of enrollment contract. (*See generally*, Complaint at Doc. 1). The undisputed facts demonstrate that the MVH Defendants did not violate any of Dr. Mares's rights, nor did they breach any contract with Dr. Mares. Dr. Mares cannot establish the requisite elements of any of her claims against these Defendants, and such claims therefore fail as a matter of law. Accordingly, these Defendants are entitled to summary judgment in their favor, and Dr. Mares's claims against them must be dismissed, with prejudice.

## II. STATEMENT OF FACTS

Dr. Mares was a resident physician in the Wright State University Obstetrics and Gynecology Residency Program (the "Program") through the Wright State University Boonshoft School of Medicine ("BSOM"). (Compl. ¶¶ 1, 15, Doc. 1 at PageID # 2, 15). BSOM assigns physicians in its residency program to work at various area hospitals, including MVH. Wright State University ("WSU") (including BSOM) and MVH have an Agreement governing the respective roles that WSU and MVH play in providing medical education to medical residents ("Medical Education Agreement"). (Affidavit of Teresa Zryd, M.D., "Zryd Aff.", at Ex. A)[1]. That

---

[1] Dr. Zryd submitted her Affidavit in connection with a previous lawsuit filed by Dr. Mares against the MVH Defendants in the Montgomery County Common Pleas Court. Pursuant to Fed R. Civ. P. 56(c)(4),

2

Agreement states that "both parties recognize that the University [WSU] retains final responsibility for the academic programs of medical student education and the academic training of resident physicians in its sponsored residencies." (*Id.* at p. 2). The Medical Education Agreement also states: "The University faculty, students, and resident physicians who are participating in this association will be under the governance of the University." (*Id.* at Sec. 2.4). Thus, "[r]esident physicians, who provide patient care under this agreement, are responsible to, and under the supervisions of, the University's clinical, volunteer and fully affiliated faculty." (*Id.* at Sec. 3.1).

When BSOM residents are assigned to MVH, they enter into a Resident-Fellow Agreement ("Resident Agreement") with both MVH and BSOM. (*See* Ex. A to Compl., Doc. 1-1 at PageID # 12-15). The Resident Agreement specifically states that the resident's employment by MVH is on an "employment at will" basis. (*Id.* at Section I, PageID # 12). Under the Resident Agreement, Dr. Mares was obligated to meet a number of performance standards, including, but not limited to the following:

- "Perform satisfactorily to the best of his/her ability, the customary services of a(n) Obstetrics/Gynecology Resident/Fellow in each progressive year of the residency program;" and
- "Participate fully in any process directed to the Joint Commission accreditation or the certification of accreditation of the Hospital and/or Program by any other agency."

(*Id*. at Section II(A) and (I), PageID # 12, 13). The Resident Agreement also provides that, "[t]his contract may be terminated by Hospital immediately, at any time prior to its expiration, for the following reasons: . . . If in the Program's opinion the resident/fellow substantially fails to meet any of the general requirements of the Program or is terminated by the Program." (*Id*. at Section IV(F), PageID # 14). The Resident Agreement further states: "Academic Progress and completion

---

the Affidavit is permitted to be submitted as evidence in the instant action. *See also, e.g.*, Fed. R. Civ. P. 32(a)(8)(allowing a deposition filed in a state court action to be used in a later action involving the same subject matter between the same parties).

3

of residency is the sole discretion of the residency program director and relevant academic department clinical competency committee." (*Id*. at Section V, PageID # 14).

Termination from the Program is governed by Item 504 - Academic and Professional Standards / Due Process of the BSOM Resident Manual ("Item 504"). (*See Id*.; Ex. C to Compl. Doc. 1-3, PageID # 19-21). According to Item 504, among the academic standards a resident must meet, "[t]he resident must acquire cognitive medical knowledge." (*Id.* at "Academic Standards" ¶ 2, PageID # 19). Item 504 also includes professional standards a resident must meet, including, "[t]he resident must perform all responsibilities as a resident competently, efficiently, and maturely," and that "[t]he resident must refrain from obstructing or disrupting medical care and hospital activities." (*Id*. at "Professional Standards" ¶¶ 1, 4, PageID # 19). "Residents are also subject to additional standards of conduct and performance adopted by hospitals participating in the educational program." (*Id*. at "Applicability"). If the resident does not meet the Program's academic and professional standards, "the program may act to demote, not promote, not renew, or terminate the resident's appointment." (*Id*. at "Adverse Actions" ¶ 1).

The due process provisions of Item 504 allow for a resident who is subject to termination from the Program to request a review of the action by a three-member hearing panel. (*Id*. at "Due Process," PageID # 20). After a hearing, the panel must make a recommendation to the dean of the BSOM and the hospital's chief executive officer. (*Id*. ¶ 5). After receiving the panel's recommendation, the dean of the BSOM and the hospital's chief executive officer (or his/her designee) must jointly decide to (1) affirm the Program's intended action; (2) take revised action against the resident; or (3) not affirm the program's intended action. (*Id*. at ¶ 6, PageID # 20-21). The dean of the BSOM and the hospital's chief executive officer are not required to accept the panel's recommendation. (*Id*.). The resident may then appeal the decision within ten working

4

days to the provost of WSU. (*Id.* at ¶ 7, PageID # 21). The provost shall then decide to either affirm or not affirm the decision. (*Id.*).

In October 2018, Dr. Theodore Talbot, as the Chair of BSOM's Clinical Competency Committee, informed Dr. Mares in writing that she was being dismissed from the Program and placed on paid administrative leave effective immediately. (Zyrd Aff. at ¶ 9, Ex. B). Dr. Mares appealed the termination decision to a hearing panel pursuant to Item 504. (Compl. ¶ 22, Doc. 1 at PageID # 7). The Clinical Competency Committee advised Dr. Mares:

> Despite formal probation March 8, 2018, mentoring, and repeated feedback sessions both written and verbal, you have continued to have lapses in professionalism and communication with patients, faculty, and other residents/medical students. While you have demonstrated competency with medical knowledge and surgical skills, your progress with medical knowledge and surgical skills, your progress with other required tasks pertaining to professionalism and communication have been unsatisfactory.

(Zryd Aff. at ¶ 9, Ex. B). Although the hearing panel recommended that Dr. Mares be permitted to remain in the Program until graduation, subject to certain conditions, Dr. Dunn, the Dean of the BSOM, and Dr. Zryd, the Vice President of Academic Affairs and Research at MVH (and the designee of the chief executive officer), agreed with the Clinical Competency Committee's determination that Dr. Mares should be dismissed from the Program. (*Id.* ¶ 13). Dr. Zryd's rationale for supporting Dr. Mares's dismissal from the Program was Dr. Mares's repeated instances of unprofessional and insubordinate conduct and her difficulties with both interpersonal communications and critical communications about patient health. (*Id.* ¶ 13).

Dr. Mares then appealed the decision to the Provost of WSU, Dr. Susan Edwards. (Zryd Aff. at ¶ 15). The Provost ultimately decided that Dr. Mares should be dismissed from the Program. (*Id.*. at ¶ 16, Ex. D).

5

Dr. Mares initially filed a lawsuit arising out of her dismissal from the Program in the Montgomery County Common Pleas Court, Case No. 2019 CV 02921, on June 21, 2019 (the "State Court Lawsuit"). Dr. Mares named the MVH Defendants as Defendants in that lawsuit, along with Wright State Physicians and several individual physician defendants.[2] After the MVH Defendants filed a Motion for Summary Judgment and Wright State Physicians filed a Motion for Judgment on the Pleadings, Dr. Mares voluntarily dismissed her State Court Lawsuit on May 19, 2020, pursuant to Ohio Civ. R. 41(A). She then filed the instant action on November 5, 2020 (the instant action) with modified causes of action. Dr. Mares's claims must fail regardless of how she characterizes such claims.

## III. LEGAL STANDARD

Under Fed. R. Civ. P 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party has the initial burden of showing there is no genuine issue as to any material fact as to an essential element of the nonmoving party's case. *Arendale v. City of Memphis*, 519 F.3d 587, 593 (6th Cir. 2008). If the movant meets this burden, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009). Such undisputed facts can be presented through depositions, documents, affidavits or declarations, interrogatory answers, or other materials. Fed R. Civ. P. 56(c)(1).

Summary judgment is a favored procedure "to eliminate a trial where it would be unnecessary and merely result in delay and expense." *Bouldis v. United States Suzuki Motor*

---

[2] The named Defendants in the State Court Lawsuit, Montgomery County Common Pleas Court Case No. 2019 CV 02921, were Miami Valley Hospital, Premier Health Partners, Wright State Physicians, Jerome Yaklic, M.D., G. Theodore Talmot, M.D., Teresa Zyrd, M.D., and Margaret Dunn, M.D.

6

*Corp.,* 711 F.2d 1319, 1324 (6th Cir. 1983). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 248. Additionally, the Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Assn.*, 78 F.3d 1079, 1087 (6th Cir. 1996). Where the nonmoving party fails to make the necessary showing on an element upon which she has the burden of proof, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Under these standards, Dr. Mares cannot show the existence of a genuine issue for trial as to any of her claims. Accordingly, the MVH Defendants are entitled to summary judgment as to all claims in Plaintiff's Complaint.

**IV. ARGUMENT**

**A. Plaintiff's Due Process Claims (Counts 1 and 2) Fail as a Matter of Law.**

The Fourteenth Amendment to the United States Constitution contains the Due Process Clause, and prohibits states from "deprivin[ing] any person of life, liberty, or property without due process of law . . . ." U.S. CONST. Amend. XIV § 1. The Due Process Clause has both a procedural component and a substantive one. Procedural and substantive due process are distinct from each other because each has different objectives, and each imposes different constitutional limitations on governmental power.

In brief, procedural due process is traditionally viewed as the requirement that the government provide a "fair procedure" when depriving someone of life, liberty, or property,

7

while substantive due process protects individuals against certain government actions regardless of the fairness of the procedures used to implement them. *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992); *see also Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992); *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000).

### 1. Plaintiff Was Not Deprived of Procedural Due Process

In her first claim, Dr. Mares alleges that the MVH Defendants violated her procedural due process rights with respect to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Dr. Mares claims that she "enjoyed a state created property right to continued enrollment in the Program and to continued employment as a resident-physician." (Compl. ¶ 26, Doc. 1, PageID# 7). Dr. Mares further alleges that these Defendants denied her "the value of that property interest when they ignored the hearing committee's recommendation following an evidentiary hearing that there was insufficient evidence to support her termination from the Program." (*Id*. at ¶ 27, PageID # 8).

The procedural component of the Due Process Clause protects rights created by state law and guarantees that no significant deprivation of life, liberty or property will take place until notice has been provided and the individual has a meaningful opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). The threshold issue in assessing a procedural due process claim is whether the **state actor** has interfered with a protected interest in liberty or property. *See Rogers v. Tenn. Bd. of Regents*, 273 Fed. Appx. 458, 462 (6th Cir. 2008) (finding that to state a viable procedural due process claim, plaintiff must establish a that a clearly established constitutional liberty or property interest was deprived under color of state law without appropriate process); *State ex rel. Ferreri*, 70 Ohio St. 3d 587, 1994-Ohio-130, 639 N.E. 3d 1189 (1994) (Generally, individual liberties protected by the United States

8

and Ohio Constitutions, such as the right to due process, apply only to actions of government entities). Dr. Mares's procedural due process claim against the MVH Defendants fails as a matter of law, because neither MVH nor PHP are state actors acting under the color of state law. "It is undisputed that ... Fourteenth Amendment protections, codified in [Section] 1983, are triggered only in the presence of state action and that a private entity acting on its own cannot deprive a citizen of [her constitutional] rights." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). Because the MVH Defendants are private entities, *see* (Compl. ¶¶ 10, 11, Doc. 1, PageID # 4), they did not act under the color of state law. *Schwartz v. Univ. of Cincinnati Coll. of Med.*, 436 F. Supp. 3d 1030, 1038-42 (S.D. Ohio 2020).

Even if these Defendants were acting under the color of state law, the Complaint does not allege the violation of any clearly established constitutional right. This is because, as a matter of law, the specific contours of the due process rights of medical residents are not "clearly established" constitutional rights under Sixth Circuit case law. *See Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 297-98 (6th Cir. 2019) (the law defining the due process rights of a medical student being dismissed from a medical education program is not clearly established); *Doe v. Miami Univ.*, 882 F.3d 579, 598 (6th Cir. 2018) (the Supreme Court has never held that the interest in continued education at a public university constitutes a fundamental property or liberty interest that finds refuge in the substantive protections of the Due Process Clause); *see also Nigro v. Va. Commonwealth Univ. Med. College of Va.*, 2010 U.S. Dist. LEXIS 56229, *24-25 (W.D. Va. 2010) (finding no clearly established constitutional right to complete a 3-year residency program).

Even if Dr. Mares could establish the existence of a constitutionally protected right, she cannot establish that such right was deprived without appropriate process. In cases of academic dismissal from a state educational institution, the Fourteenth Amendment's procedural due process

9

requirements are met when a student has been fully informed of the dissatisfaction with her progress and the decision was careful and deliberate. *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 85, 98 S. Ct. 948 (1978); *Ku v. Tennessee,* 322 F.3d 431, 436 (6th Cir. 2003). Dr. Mares's own allegations establish that she received notice of her deficient performance, an opportunity to appeal the decision to dismiss her from the Program, and she was even afforded an evidentiary hearing held before a panel of neutral physicians. (Compl. ¶¶ 17-22, Doc. 1 at PageID # 5-7; Zyrd Aff. at ¶¶ 10-13). Specifically, according to Dr. Mares's allegations, the BSOM informed Dr. Mares of its dissatisfaction and decision to dismiss her from the Program because of "Dr. Mares's 'persistent demonstration of unprofessional and insubordinate behavior as well as concerns regarding her deficiencies in critical communication obligations and entering incorrect information in a patient safety report.'" (*See* Compl. at ¶ 18, Doc. 1 at PageID # 5). Dr. Mares also alleges that she was informed that she "had failed to demonstrate satisfactory progress throughout her residency, primarily in the areas of professionalism and interpersonal communications skills with staff, residents, and attending physicians." (*Id*. at ¶ 20 ; Zryd Aff. Ex. B).

Consistent with the due process provisions of Item 504, Dr. Dunn and Dr. Zryd rejected the hearing panel's recommendation and affirmed the Clinical Competency Committee's recommendation that Dr. Mares should be dismissed from the Program. (*Id*.; Ex. C. to Compl., Doc. 1-3 at PageID # 20-21; Zryd Aff. at ¶¶ 11-14, Ex. C). Dr. Mares was also entitled to and took advantage of her further due process rights to appeal to the Provost of the University and the Provost made the final determination that Dr. Mares should be dismissed. (Zryd. Aff. at ¶¶ 15-16, Ex. D).

WSU's Provost has no affiliation with the MVH Defendants. The Medical Education Agreement between WSU and MVH clearly provides that WSU retains final responsibility for the academic programs of medical student education and Item 504 provides that the Provost shall make the final decision regarding the termination of a resident from the Program. (Zryd Aff. at Ex. A; Compl. at Ex. B, Due Process ¶7). Consequently, MVH and PHP cannot be held responsible for the academic decision to dismiss Dr. Mares from the Program. Regardless, just because Dr. Mares did not like the ultimate decision does not mean she was not provided with due process. *See, e.g., Reed v. State Med Bd.*, 162 Ohio App.3d 429, 442, 2005-Ohio-4071, ¶ 35 (holding that the fact that a doctor disagreed with a medical board's finding that she violated the standards of the board did not mean that the board lacked sufficient evidence upon which to base its decision and the board's findings "did not deny [the doctor] due process of law."); *In re Da.R.*, 2019-Ohio-2270, ¶ 19 ("The fact that she disagrees with the decision reached by the trial court does not mean that she was denied due process."). Dr. Mares received all the due process outlined in Item 504. In fact, this is more than the due process to which she is otherwise entitled under the law.

In addition to the aforementioned reasons for granting judgment in favor of the MVH Defendants on Dr. Mares's due process claim, this Court should also defer to the carefully made decisions by both WSU and the MVH Defendants to dismiss Dr. Mares from the residency program. In considering the quantum of due process owed by a university to a dismissed medical student, the U.S. Supreme Court distinguished between dismissals from education institutions (such as Dr. Mares's dismissal from the BSOM in the instant case) on the basis of an "academic" rationale and those that may be properly characterized as "disciplinary." *Horowitz*, 435 U.S. at 89-90. The Court noted that an academic dismissal is one that involves "a school's determination

11

of whether a student will make a good doctor," and the school's consideration of a student's personal attributes may permissibly factor into this "academic" decision. *Id*. at 91 n.6.

In the case of academic dismissals, due process only requires that a student is informed of the nature of the faculty's dissatisfaction and that the ultimate decision to dismiss is "careful and deliberate" and does not require a hearing. *Id*. at 85; *Fenje v. Feld*, 398 F.3d 620, 626-627 (7th Cir. 2005).[3] "Courts have consistently held that the dismissal of a resident for poor clinical performance is an academic decision." *Knapik v. Mary Hitchcock Mem'l Hosp.*, 90 F. Supp.3d 292, 300 (D. Vt. 2015) (citations omitted.). Such "[a]cademic decisions are entitled to substantial deference." *Id., citing Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 225, 106 S. Ct. 507 (1985). Thus, the Supreme Court has discussed the "narrow avenue of judicial review" of an academic decision to dismiss a resident from a medical school program as follows:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a great substantial departure from the accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Ewing,* 474 U.S. at 225.

Concern about a medical student's lack of professionalism is an academic judgment. *See Al-Dabagh v. Case Western Reserve Univ.*, 777 F.3d 355, 356 (6th Cir. 2015). Likewise, a decision to dismiss a medical resident for poor performance – including lack of professionalism – is an academic, rather than an employment decision. *See, e.g., Ku, 322 F.3d at 436* (noting that such qualities as a student's ethical behavior and interpersonal relationships with medical colleagues, patients, and patient's families are relevant academic considerations); *Gupta v. New Britain Gen. Hosp.* 239 Conn. 574, 687 A.2d 111, (Conn. 1996) ("[T]he hospital's decision to dismiss the

---

[3] Not only does this rationale apply to Dr. Mares's procedural due process claim, it also applies to her substantive due process claim, discussed *supra*.

12

plaintiff for poor clinical performance constituted an academic, rather than an employment, decision."); *David v. Mann,* 882 F.2d 967, 974 (5th Cir. 1989) ("The residency program is distinct from other types of employment in that the resident's 'work' is what is academically supervised and evaluated. It is well-known that the primary purpose of a residency program is not employment or a stipend, but the academic training and the academic certification for successful completion of the program."); *Ross v. Univ. of Minn.*, 439 N.W.2d 28, 32 (Minn. Ct. App. 1989) ("[A] resident is a student for the purpose of reviewing the decision to dismiss for academic reasons. To hold otherwise would be to threaten the autonomy of academic institutions to determine standards for the passing and failing of students.").

Based on Dr. Mares's own allegations conceding that she received all the process she was due, including a full pre-deprivation evidentiary hearing prior to termination, judgment in favor of the MVH Defendants should be entered as a matter of law.

For these reasons, Dr. Mares can prove no set of facts in support of her claim of procedural due process which would entitle her to relief. As such, summary judgment should be entered in the MVH Defendants' favor as to Count 1.

### 2. Plaintiff Was Provided With Substantive Due Process

In her second claim, Dr. Mares alleges that the MVH Defendants violated her substantive due process rights with respect to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Specifically, Dr. Mares claims that "the decision to terminate Dr. Mares's employment and her enrollment as a resident-physician in the Program was arbitrary, capricious, and rested upon considerations that had not been adopted as official standards or criteria for continued employment or participation in the Program as set forth in or made a part of the Agreement or the Graduate Medical Education Agreement." (Compl. ¶ 30, Doc. 1 at PageID # 8). The interests protected by substantive due process are much narrower than those protected

13

by procedural due process.  *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-250 (6th Cir. 2003).  In *Bell*, the Sixth Circuit rejected the notion that substantive due process protects a medical student's interest in continuing education.  *Id.* at 249-51. *See also, Doe v. Miami Univ., supra.*

Several grounds exist for awarding judgment in favor of the MVH Defendants with respect to Dr. Mares's substantive due process claim.  First, Dr. Mares has not pled any facts to support such a claim.  Second, the MVH Defendants are private actors and are not acting on behalf of the government.  Third, substantial deference should be given to the academic decision to dismiss Dr. Mares from the residency program.

To state a substantive due process claim, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious or conscience shocking action.  *See Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008) (referring to the arbitrary and capricious standard).  Accordingly, Dr. Mares's second claim can survive only if the MVH Defendants acted in a manner that is "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights."  *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989).

First, and as set out above, Dr. Mares's Complaint does not set forth any clearly established constitutional rights that were violated by the MVH Defendants.  Second, Dr. Mares's allegations do not support the proposition that the MVH Defendants' actions shock the conscience.  Dr. Mares has not pled any facts to suggest that the MVH Defendants engaged in actions that "violate[d] the decencies of civilized conduct" or that were "so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency."  *Range v. Douglas*, 763 F.3d 573, 589-90 (6th Cir. 2014).  Dr. Mares has not pled and cannot establish any facts to suggest that the MVH Defendants

14

"intended to injure without any justifiable government interest," which matters because "[m]erely negligent tortious conduct is categorically beneath constitutional due process." *Id.* at 590. As set forth above in the discussion regarding Dr. Mare's failure to establish a procedural due process claim, this Court should also defer to the non-arbitrary, non-capricious, and consciously made decisions by both WSU and the MVH Defendants to dismiss Dr. Mares from the residency program in considering her substantive due process claim. Dr. Mares has not pled any facts to support a substantive due process claim against the MVH Defendants. Accordingly, the discussion on this issue can end here. Nevertheless, there are further reasons as to why Dr. Mares cannot establish a substantive due process claim.

Dr. Mares's substantive due process claim must also rest on "the right to be free of 'arbitrary and capricious' action by **government actors**." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992)) (emphasis added). As pled in Dr. Mares's Complaint, the MVH Defendants are private entities. *See* (Compl. ¶¶ 10, 11, Doc. 1 at PageID # 4). Once again, because neither MVH nor PHP are state actors, Dr. Mares cannot establish that these Defendants were acting under the color of state law, and Dr. Mares's substantive due process claim against MVH and PHP fails as a matter of law.

The decision to uphold Dr. Mares's dismissal was not arbitrary or capricious, and was made after a thoughtful and thorough consideration of the issues presented. Under such circumstances, Dr. Mares cannot establish that the MVH Defendants denied her substantive due process. Her second claim must therefore fail.

### B. Plaintiff Cannot Establish a Claim for Breach of Employment Contract (Count 3) As A Matter of Law

Plaintiff's Complaint references the Resident-Fellow Agreement as the "Employment Contract" upon which she bases her breach of contract claim in Count 3 of her Complaint. (Such

15

Agreement is attached as Exhibit A to the Complaint, Doc. 1-1 at Page ID # 12-15). Dr. Mares's breach of contract claim purportedly arises out of her dismissal from the Program, although her Complaint is devoid of specific allegations regarding the provisions of the Resident Agreement she alleges were breached by the MVH Defendants.[4] When a complaint sounds in contract, as in the instant case, the promise(s) claimed to have been broken must be set forth with sufficient detail so that it can be identified. *See Harris v. American Postal Workers Union,* Case No. 98-1734, 1999 U.S. App. LEXIS 2660, *14 (6th Cir. Oct. 19, 1999) ("It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached."). Viewing the evidence in favor of Dr. Mares, she cannot establish a claim for breach of contract. Under Ohio law, the elements of a claim for breach of contract are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006); *accord Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶18, 878 N.E.2d 66.

Not only does Dr. Mares fail to allege any of the specific terms of the Resident Agreement that have allegedly been breached in her Complaint, she also specifically fails to identify any restrictions on the parties' ability to terminate the contract. For this reason alone, Plaintiff's claim must fail as a matter of law. The Resident Agreement makes clear that Dr. Mares's employment with MVH was "at will." Thus, she could be terminated with or without cause or notice. *See Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 103, 483 N.E. 2d 150 (1985) (Under an at-will contract, an employer "may terminate the employment relationship for any reason which is not

---

[4] In her Complaint, Dr, Mares only mentions that Defendants had a "contractual obligation to address and ameliorate Dr. Mares' manifestations of 'physician burnout.' (Compl. at ¶ 21, Doc. 1 at PageID # 6). The term "physician burnout" is not mentioned anywhere in the Resident Agreement, nor does the Resident Agreement place any obligation on the MVH Defendants to address and ameliorate physician burnout.

16

contrary to law."). Under the unambiguous language of the Resident Agreement, Dr. Mares was aware that the Resident Agreement could be terminated and that "completion of Residency is the *sole discretion* of the residency program director and relevant academic department competency committee." (Compl. at Ex. A, Section V, Doc. 1-1, PageID # 14) (emphasis added). Because Dr. Mares could be and was dismissed from the Program in the sole discretion of the aforementioned individual and committee, the MVH Defendants cannot be held liable for Dr. Mares's dismissal from the Program. Once Dr. Mares was dismissed from the Program, MVH had an absolute right to immediately terminate the Resident Agreement with Dr. Mares. (*Id.* at Section IV(F)).

Courts throughout Ohio and elsewhere have rejected contractual and quasi-contractual claims against hospitals from medical residents who have been dismissed from their respective programs. *See, e.g., Rizvi v. St. Elizabeth Hosp. Med. Ctr.*, 2003-Ohio-7011, ¶ 25; *Rehman v. Cuyahoga Cnty. Hosp.*, 1991 Ohio App. LEXIS 2213 *6-9; *Mounla-Sakkal v. W. Reserve Care Sys.*, Case No. 4:98CV2251, 2000 U.S. Dist. LEXIS 22203 (N.D. Ohio May 18, 2000); Alvarez v. *Hosp. Episcopal San Lucas, Inc.*, Case No. 15-2413, 2019 U.S. Dist. LEXIS 5797 D. P.R. Jan. 10, 2019; *Hason v. Univ. of California Bd. of Regents*, 35 Fed. App'x 340, 341 (9th Cir. 2002); *Gupta*, 687 A.2d at 119; *Abdullah v. State,* 771 N.W. 2d 246, 255 (N.D. 2009). This Court should similarly reject Dr. Mares's claims.

In summary, Dr. Mares's breach of contract claims against the MVH Defendants fails because: (1) she fails to identify any specific term(s) of the Resident Agreement that MVH and PHP allegedly breached; (2) the Resident Agreement unambiguously and specifically provides that her relationship with MVH was terminable "at will"; (3) MVH had an absolute right to immediately terminate the Resident Agreement once she was terminated by the Program; and (4) the Resident Agreement specifically provides that her completion of the residency program is in

the "sole discretion" of the residency program director and the relevant academic competency committee. Accordingly, the MVH Defendants are entitled to summary judgment on this claim

**C. Plaintiff's Breach of Enrollment Contract Claim (Count 4) Fails as a Matter of Law.**

The basis of Dr. Mares's breach of enrollment contract claim is the WSU Boonshoft School of Medicine Graduate Medical Educational Agreement attached as Exhibit B to Dr. Mares's Complaint ("Enrollment Agreement"). (*See* Compl. ¶¶ 33, 34, Ex. B, Doc. 1 at PageID # 33-34, Doc. 1-2 at Page ID# 17). This count purportedly arises out of her dismissal from the Program, but, like the breach of contract claim arising out of the Resident Agreement, Dr. Mares's Complaint is devoid of specific allegations regarding the provisions of the Enrollment Agreement that she alleges were breached by the MVH Defendants.

Viewing the evidence in favor of Dr. Mares, she cannot establish a claim for breach of contract against these Defendants because the MVH Defendants were not contracting parties to the Enrollment Agreement at issue in Count 4. *See Samadder v. DMF of Ohio, Inc.*, 154 Ohio App. 3d 770, 2003-Ohio-5430, 798 N.E. 2d 1141, 1147 (Ohio Ct. App. 2003) (Under Ohio law, "a contract is binding only upon the parties to a contract and those in privity with them."); *Knight Capital Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 779-780, (6th Cir. 2019) ("It is axiomatic that only parties to contracts are liable for their breach. A person who is not a party to a contract (i.e., is not named in the contract and has not executed it) is not bound by its terms.") (interpreting Connecticut law) (internal citation and quotation marks omitted). Under the unambiguous language of the Enrollment Agreement, such contract existed only between Dr. Mares and the WSU Defendants. And although Plaintiff's Complaint references the Enrollment Agreement, it fails to allege any of the specific terms of the agreement that have allegedly been breached-by the MVH Defendants. For these reasons, Plaintiff cannot establish a claim for breach of the Enrollment Agreement. *See, e.g.*, *Mezibov v. Allen, 411 F.3d 712, 716* (6th Cir. 2005) ("[A]

18

complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory," or it will be dismissed), *Varee v. Holzinger*, 2007-Ohio-1924, ¶ 24 (11th Dist.) (where the allegations in a complaint are not sufficient to state a contract claim a "material point" is missing, and the complaint is properly dismissed). Thus, an entry of summary judgment should be entered in favor of the MVH Defendants as to Count 4.

## V. CONCLUSION

For each and every of the foregoing reasons, Miami Valley Hospital and Premier Health Partners respectfully request that the Court grant their motion for summary judgment and dismiss all claims against them, with prejudice.

Respectfully submitted,

*/s/ Karen T. Dunlevey*
Karen T. Dunlevey (0067056)
JACKSON LEWIS P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, OH 45202
Telephone: (937) 949-3846
Facsimile: (513) 898-0051
Karen.Dunlevey@jacksonlewis.com

*Counsel for Defendants Miami Valley Hospital and Premier Health Partners*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing Motion was electronically filed and served upon all counsel of record through the Court's Case Management and Electronic Case Filing (CM/ECF) system on November 19, 2021.

                                                        */s/ Karen T. Dunlevey*
                                                        Karen T. Dunlevey

4874-4996-7620, v. 1