# Exhibit C

Item 504
Academic and Professional Standards / Due Process
Revised October 2013

**Purpose**

The primary purpose of the Boonshoft School of Medicine (BSOM) residency and fellowship programs is to provide high quality graduate medical education, patient care, experience in teaching, and the opportunity to conduct research. The procedures contained in this document concerning the academic standards and the professional standards are intended to further these fundamental goals.

**Applicability**

These procedures and standards are applicable to residents in all BSOM sponsored graduate medical education programs.

Residents are also subject to additional standards of conduct and performance adopted by hospitals participating in the educational program. To obtain a copy of a hospital's standards of conduct, contact the medical education office.

The Office of Faculty and Clinical Affairs and the Director of Medical Education for the employing institution shall be consulted before the implementation of any due process.

**Academic Standards**

1. The resident must demonstrate the competence, efficiency, and maturity necessary to assume increasing responsibilities for teaching and supervising other residents, fellows, and students.
2. The resident must acquire appropriate cognitive medical knowledge.
3. The resident must competently obtain thorough medical histories, perform complete physical exams, develop rational differential diagnoses, and implement appropriate management plans for treatment of patients appropriate to his or her level of responsibility.
4. The resident must assume appropriate responsibility for patient.
5. The resident must demonstrate approved creativity in the advancement of patient care and medical knowledge appropriate to his or her level of responsibility.

Violations of one or more of the above academic standards constitute sufficient grounds for academic suspension, academic demotion, academic non-promotion, academic non-renewal or academic termination.

**Professional Standards**

1. The resident must perform all responsibilities as a resident competently, efficiently, and maturely.
2. The resident must refrain from engaging in any conduct that is grounds for (a) refusal to grant or (b) revocation of a certificate to practice medicine in Ohio as provided by the Ohio Revised Code Section 4731.22.
3. The resident must refrain from habitual or excessive drug or alcohol use or any combination thereof.
4. The resident must refrain from obstructing or disrupting medical care and hospital activities.
5. The resident must obey all provisions of the American Medical Association Principles of Medical Ethics.

Violations of one or more of the above standards relating to professional conduct constitute sufficient grounds for disciplinary suspension, disciplinary termination, or disciplinary non-renewal of the resident's appointment.

**Continued Appointment / Promotion**
The above academic and professional standards must be met for continued appointment and/or promotion.

**Adverse Actions**

1. If the above academic standards or professional standards are not met, the program may act to demote, not promote, not renew, or terminate the resident's appointment. A written notice of the action shall be transmitted to the resident and shall include:
    - the program's intended action,

- a summary of the reason[ ] the intended action, and
- the right of appeal as described in this policy.

2. Written notice of intent to not renew, not promote or terminate a resident's appointment must be provided to residents no later than 120 days (four months) prior to the end of their current contract if the primary reason occurred prior to the last 120 days of the contract.

    When professional standards are not met, the program director may immediately suspend the resident with pay for a maximum of 60 days. Within five working days of taking this action, the program must notify the resident in writing stating the reasons for the action and the program's intention to reinstate or terminate the resident's appointment at the end of the suspension period.

3. The program director will meet with the resident to discuss the program's intended action and to attempt resolution of any disputed issues.

**Due Process**

1. Within five working days after receipt of the written notice or within five working days after the conference with the program director, whichever is later, the resident may request in writing a review of the program's intended action. The review will not be granted if requested after the five-day period has expired except under extenuating circumstances.
2. Within 60 calendar days after the receipt of the request for the review, the Designated Institutional Official (DIO) or designee must convene a hearing to review the intended action.
3. Review panel membership
    - Panel membership will consist of three faculty members, who are knowledgeable of the program's academic content. The panel members will be appointed jointly by the dean of the BSOM and the employing institution's chief executive officer/commander. One of the three members will also be appointed as chair.
    - One member of the three will be nominated by the resident. Within five working days of requesting the review, the resident may submit a list of three to five faculty nominees as a member. One nominee will be selected from the list by the dean and the chief executive officer/commander to serve on the panel.
    - If the resident is on active duty with the United States Air Force, at least one member of the review panel must be an active duty medical officer stationed at the Wright-Patterson Medical Center (see #6).
4. The purpose of the review is to determine if there is substantial evidence to support the program's intended action.
    1. The program or resident may have an attorney present as an observer but may not be represented by the attorney at the hearing.
    2. The hearing will be recorded by the Boonshoft School of Medicine, and a transcript made available to the resident upon request.
    3. If the resident fails to appear for the scheduled hearing, the program's decision shall be affirmed.
    4. The program director
        - will present the basis for the intended action,
        - may call witnesses if a 15 calendar day advanced written notice is provided to the resident, and
        - may question the resident or any witnesses called by the resident.
    5. The resident
        - may appear and speak on their own behalf,
        - has the opportunity to respond to the program director's presentation,
        - may question the evidence, the program director, or any witnesses that have been called by the program,
        - may present evidence including testimony of witness,
        - will be responsible for questioning any witnesses that the resident has asked to attend, and
        - may be assisted by a faculty advisor chosen by the resident. This advisor may give advice to the resident or may speak on the resident's behalf.
    6. The hearing panel
        - may question any witnesses that have been called by either the program director of the resident and
        - will not consider any information related to the resident's performance after the program's decision.
5. Within ten working days following the conclusion of the review, the panel must submit a written recommendation to the dean and the employing chief executive officer/commander. The panel must reach their decision by a majority vote based on the evidence presented. The recommendation can be to
    - affirm the program's intended action,
    - take revised action against the resident, or
    - not affirm the program's intended action.

6. Within 15 working days of the re    t of the review panel's recommendation   e dean of the BSOM and the employing institution's chief executive officer/commander must jointly decide and notify the resident in writing of the decision. The decision can be to
    - affirm the program's intended action,
    - take revised action against the resident, or
    - not affirm the program's intended action.
7. Within ten working days of receipt of the notice of the decision, the resident may appeal the decision to the provost of the university. The appeal must be made in writing and must contain the action the resident requests and reasons in support of that action. Within 15 working days of receipt of the appeal, the provost of the university must notify the resident in writing of the decision to affirm or not affirm the action.
8. In the case of military residents, once the recommendation of the review panel is finalized, Wright-Patterson Medical Center may conduct hearings according to USAF rules and regulations regarding the individual's military status. Final approval by HQ AFPC/DPAME is required.

The dean and the chief executive officer/commander at their discretion may modify time lines as may be appropriate to ensure fairness and realities of scheduling.