

One Wyoming St.
Dayton, Ohio 45409

mvh.org

To: Dr. Susan Edwards, Ph.D.
    Executive Vice President for Academic Affairs and Provost

From: Dr. Marc Belcastro, D.O.
    Chief Medical Officer and Vice President of Operations
    Premier Health, South Region
    mrbelcastr@premierhealth.com
    937-208-2712
    937-974-9314

Dear Dr. Edwards,

I am writing on behalf of Dr. Jackie Mares, the OB/Gyn resident that was recently released from her program with about 6 months remaining. While I am not intimately familiar with the specifics of her case, I have reviewed her appeal letter and have picked up a few themes. Her leaders and mentors often expressed disapproval of her decisions with silence or lack of clear and direct feedback. There seemed to be no attempt to coach her through situations where she felt unsafe or how to regain the trust of a patient. She appropriately apologized for one situation and had developed some degree self-awareness and self-reflection. Finally, a finding of untruthful documentation was added to the list of complaints to which she had no recollection or time to adequately respond.

Prior to the hearing and decision, I had been informed of her situation in general terms from the maternal fetal medicine physicians providing her support. This is a group that spends a significant amount of time teaching the residents, so her character would not be foreign to them. They reached out to me because of my considerable experience in coaching and mentoring physicians and nurses in relationship building, listening and communication skills, as well as emotional awareness. These are skills I have learned and used through Premier Health's engagement with a company out of Columbus called, "Business of People". I currently facilitate a physician/advance practitioner cohort. I expressed a willingness to meet with Dr. Mares up to weekly if necessary, for the remainder of her residency to ensure her success.

As a Chief Medical Officer, I understand the importance of our Bylaws, Rules and Regulations, and holding our providers accountable for professionalism and behavior. Healthcare is a sacred responsibility and patients deserve our best. I also believe that leaders must be very clear and direct about expectations when someone's life and career hang in the balance. Finally, as leaders, we need to extend grace and design a clear plan for improvement to help every individual be successful if possible. Dr. Mares was given only time, and her leaders acted after a number of events transpired, but I do not believe she was provided with the feedback, expectations, or resources to be as successful as I know she can be. This is a life, and leaders need to value and care for those they lead. I ask that you strongly consider a different path for Dr. Mare to complete her residency with clear guardrails.

Please feel free to contact me,

Sincerely,

Marc Belcastro, D.O.

EXHIBIT 28



The Center For Maternal-Fetal Medicine,
Ultrasound and Genetics
One Wyoming St.
Dayton, Ohio 45409-2793
(937) 208-2516
(937) 208-6124 Fax

December 14, 2018

Susan Edwards, PhD
Executive VP for Academic Affairs & Provost
University Hall 256
3640 Colonel Glenn Hwy.
Dayton, Ohio 45435-0001

Re: Jacquelyn Mares, MD

Dear Dr. Edwards:

This letter is written on behalf of Dr. Jacqueline Mares. I am privileged to serve as her advisor during the appeal process addressing her termination from the Wright State University Boonshoft School of Medicine, Obstetrics and Gynecology Residency Program. To introduce myself, I am a product of this residency program, class of 2007. In my years here I have worked with over 110 residents in the WSU BSOM OB/GYN Program. In my honest opinion, Jackie is as human as the rest of us. She is young and under pressure, burned out and trying to cope with the immense stressors of our amazing profession. She is also competent, compassionate, skilled, hard-working, and dedicated to patient care. Jackie possesses immense potential.

Prior to her termination, Jackie and I had developed a solid working and interpersonal relationship. In my time as her formal advisor, she has confided in me a raw, detailed account of OB/GYN residency as viewed through her lens. Through my subsequent, objective investigations, I have come to understand that she has not committed a single grievance I have not witnessed before in this program. Some of her grievances I myself was guilty of in training, and others I have seen committed by attending physicians who are currently recommending her termination from this training program. My recognition that she has become a casualty of this dichotomy between expectations and reality is, quite frankly, one of the most sobering realizations in my experience as an attending physician to date.

I am openly fraught by worry for Jackie Mares and her future. She has dedicated her *entire* adult life to becoming a physician. Her identity has been permanently altered by the art and practice of medicine. She has suffered from burnout during the rigors of residency training, and despite moments of desperation she has developed a reinvigorated passion for obstetrics and gynecology. Jackie has pushed ahead with good work ethic and determination to develop a skill set that illustrates competency and great potential for future growth. I along with an overwhelming cohort of physicians and other medical personnel at Miami Valley Hospital are distressed by her termination because we have come to understand we *need her and what she brings to our profession.*

The collection of documents and letters presented to you is a representative portion of the narrative of the WSU BSOM OB/GYN Residency Program as experienced by one Dr. Jacqueline Mares. It is in part an historical account of the program's strengths and successes, as well as its struggles and shortcomings. Jackie's story also carries a cautionary message comparable to that of the canary in the coal mine. My exploration and dissection of her residency experience has manifested as my realization that the canary metaphor has evolved into real human experience within the WSU OB/GYN Residency Program. During her appeal hearing, Dr. Yaklic acknowledged that we failed Jackie. Yet here we are, bearing witness to an abominable sacrifice of the proverbial lamb.

As a physician educator, I ardently believe we must re-center our focus to the observation made by the program's chair. Furthermore, we should explore our failure in resident education lest we risk recurring future loss of physicians of great potential. As stewards of physicians in training, we must commit ourselves no only to the promotion of their academic success and technical skills, but also to fostering their emotional and mental well-being.

Dr. Edwards, please examine the transcript of the appeal hearing and all materials Jackie provided to Dr. Painter during that time. Study the details of the appeal committee's recommendations and action plan. Read each letter of support word-by-word. Consider what appears to be a breach of due process by Dean Margaret Dunn when she cited a patient safety report (PSR) as justification for overturning the appeal committee's recommendations although this PSR was never presented to the committee, and as a result Jackie was not able to address it prior to Dean's decision. I implore you to do the difficult but right thing by reinstating and supporting Dr. Jacqueline Mares as a PGY-4 in the WSU BSOM OB/GYN Residency Program.

You are very welcome to contact me if you wish to discuss this matter in person or by phone (cell: 937-477-7178; asst: 499-0122). Thank you for attention.

Sincerely,

Melanie M. Glover, MD
mmglover@premierhealth.com
Chair, MVH Department of OB/GYN
Chair, MVH Safety Committee
Chair, Morbidity and Mortality Improvement
Clinical Assistant Professor, Dept. of OBG, BSOM, WSU



Department of Obstetrics and Gynecology
128 E. Apple Street, Suite 3800 • Dayton, OH 45409
Tel 937.208.2850 • Fax 937.222.7255
medicine.wright.edu

December 12, 2018

Susan Edwards Ph.D.

Provost

Wright State University

Dear Dr. Edwards,

I am writing in support of Dr. Jacqueline Mares' appeal to complete her residency in the Department of Obstetrics and Gynecology Boonshoft School of Medicine located at Miami Valley Hospital. I have trained her for over 2 years. The details behind her dismissal and inability to complete her 4th and final year of residency will no doubt be readily available to you. However, I support that she should be allowed to complete her residency.

I am the Women's Health Clerkship Director and an Associate Professor in the WSU-BSOM Department of Ob-Gyn. I manage 3rd year medical student education in a didactic fashion and by providing a good clinical learning environment. Dr. Mares is one of our preceptors, as are all the residents in our program. She was identified in several student evaluations to be a preceptor who provided a hostile working environment. This was through communication mistakes and poorly demonstrated attitudes toward student education. Because of multiple negative evaluations, the BSOM administration insisted on management. The Dept. Ob-Gyn Chair, Dr. Jerome Yaklic and Residency Director, Dr. Michael Galloway, responded by counseling of Dr. Mares and initiating her probation.

Dr. Mares made the changes that were asked of her and this was reflected in medical student evaluations that indicated a positive change. There were no negative evaluations of her in the 6 months subsequent to her probation. In addition, there were some commendations of her teaching. I was very pleased to see this change.

The decision that the Dept. Ob-Gyn made to not allow Dr. Mares to complete her residency was based on her negative communications with individuals on several levels including: subordinates, colleagues, attending physicians, and most recently a patient's family member. This collection of events over the last two years indicate that she has a problem with the management of her own stress leading to unprofessional communication.

As a member of the WSU Dept of Ob-Gyn Residency Education Committee, I originally voted that she be allowed to finish her residency despite repetitive infractions of professionalism because I weighed this communication problem against her ability to be an Ob-Gyn. Her knowledge and skills in my specialty are on par with her peers and she has demonstrated excellent communication skills. Her communication mistakes are inconsistent and unpredictable. It seems to be that during extreme stress, Dr. Mares' attention to this weakness



Department of Obstetrics and Gynecology
128 E. Apple Street, Suite 3800 ▪ Dayton, OH 45409
Tel 937.208.2850 ▪ Fax 937.222.7255
medicine.wright.edu

breaks down. Still her mistakes are not excusable and she needs dedicated help to have consistent and dependable good communication skills.

With all due respect to my Chair, Dr. Yaklic, my Dean, Dr. Dunn and Assistant Dean, Dr. Painter, and others who spent hours poring over this problem of how to handle Dr. Mares and her communication blunders, and made the decision that she is appealing now, I still stand by my feeling that she should be allowed to complete her residency. With the right help and with time she will manage her stress and she will consistently communicate effectively. I ask that you give her this chance.

Most sincerely,

Sheela Barhan M.D.

Associate Professor

Clerkship Director of Women's Health

WSU- Boonshoft School of Medicine

Sheela.barhan@wright.edu

Cell# 937-219-5741



The Center For Maternal-Fetal Medicine,
Ultrasound and Genetics
One Wyoming St.
Dayton, Ohio 45409-2793
(937) 208-2516
(937) 208-6124 Fax

December 13, 2018

Susan Edwards, PhD
Executive VP for Academic Affairs & Provost
University Hall 256
3640 Colonel Glenn Hwy.
Dayton, Ohio 45435-0001

Re: Jacquelyn Mares, MD

Dear Dr. Edwards:

I request you please read this letter carefully. You have an opportunity to right a wrong which is contrary to the University's core values, save a young physician's career, and prevent irreparable harm to Wright State University.

I am writing this letter on behalf of Jacquelyn Mares, MD, whom Dean Margaret Dunn has recommended be terminated from the WSU BSOM Obstetrics and Gynecology Program. My affiliation with this residency program began 1992, and I believe my judgement and experience are sound when I unequivocally say the Dean has made a grave mistake.

I am a member of the Department's Clinical Competency Committee and was present when the original recommendation was made on 10/3/18 to terminate Dr. Mares' employment. In retrospect, it is clear the information presented to this committee regarding Dr. Mares' conduct was hearsay, biased, and flawed. In truth she suffers from burnout, and despite this mental health condition has significantly improved her professionalism during her probationary period.

Per the University's due process, Dr. Mares' case was reviewed on 11/7/18 by a formal review panel. Comprised of three BSOM faculty, the panel's evaluation of the evidence took six hours. After hearing all sides, the panel recommended she continue on probation, and added elements to treat burnout, improve her professionalism, and succeed as a physician. These elements include professional counseling, a formal course on professionalism, oversight, and mentoring.

This recommendation was subsequently rejected by the Dean who cited two additional brand new allegations, neither of which Dr. Mares was ever made aware, nor given the opportunity to explain. As a faculty member, attending physician at Miami Valley Hospital, and member of the Clinical Competency Committee, I never heard about the new allegations. The Dean's action was capricious and arbitrary, and ignored the due process and work of three physicians who dedicated the better part of a day developing a solution to help Dr. Mares.

The crux of the issues with Dr. Mares relate to lapses in professional behavior, which she acknowledges and has objectively improved. She has never placed patients in danger, nor has her clinical care been an issue. She recognizes that she responds to stress unfavorably, and has been working on her reactions. Who among us does not have room to improve their response to stress?

The University and Medical School have an obligation to provide Dr. Mares the opportunity to be successful. The review panel's plan does just that. Termination will ruin her career. She will never be able to practice medicine. It will also damage the reputation of the Department of Obstetrics and Gynecology, the BSOM, and Wright State University. Residents, medical students, and medical school applicants will know that the program chooses to terminate residents rather than provide the resources needed to combat mental health conditions such as physician burnout. The damage to our reputation will have long lasting negative effects, something Wright State can hardly afford.

I hope from this appeal you clearly see Dr. Mares' termination is wrong, and that she is deserving of our program's help. I have tried to be brief, and I would be happy to discuss any of this content further with you in person, or you may call me on my cell phone, 937-478-9556. Thank you for your attention to this matter.

Sincerely,

David S. McKenna, MD
Clinical Associate Professor



One Wyoming St.
Dayton, Ohio 45409
(937) 208-8000
www.mvh.org

December 11, 2018

Susan Edwards, PhD
Executive VP for Academic Affairs & Provost
University Hall 256
3640 Colonel Glenn Hwy.
Dayton, Ohio 45435-0001

Re: Jacquelyn Mares, MD

Dear Dr. Edwards:

I am writing in support of Dr. Mares to continue in our OB/GYN residency program.

I am volunteer faculty and have worked with Dr. Mares on many occasions and have never witnessed performance or behavior that would warrant dismissing her. I also do attending call two to four times a month which has allowed me to work closely with her.

I have noted that at times she has seemed aloof and/or depressed. I am not sure what definitive action has been taken to help her. I serve on the Physician Effectiveness Committee at Miami Valley Hospital. When we identify a problem with a physician, there is a process by which that individual is referred for professional help and monitored. It is specific and defined, not recommended, not just a mentor, etc. That is what we do for a staff member, I would hope we could do as much or better with a resident we have committed to train.

I have asked around about this matter. Nurse managers, nurses, fellow residents, none of who supports her dismissal. My experience is when we truly have a bad egg, the good riddance sentiments are unanimous.

I suggest we implement a defined action plan to help this resident we committed to train. This is a person who has worked hard her whole life to get to this point. She will not be able to find an R4 position somewhere else. We need to be sure with have exhausted every effort. I'm not sure we have.

Sincerely,

J. Scott Bembry, MD



**Miami Valley Hospital**
Premier Health Partners

The Center For Maternal-Fetal Medicine,
Ultrasound and Genetics
One Wyoming St.
Dayton, Ohio 45409-2793
(937) 208-2516
(937) 208-6124 Fax

12 December, 2018

Susan Edwards, PhD
Executive VP for Academic Affairs & Provost
University Hall 256
3640 Colonol Glenn Hwy.
Dayton, Ohio 45435-0001

Re: Jacquelyn Mares, MD

Dear Provost Edwards:

I write this letter in strong support of Dr. Jacqueline Mares, to appeal for her reinstatement as a chief resident to complete her training. I would like this document to be submitted as a testament to her character, knowledge, and clinical skills as a provider of obstetrical care. I have personally known and worked with Jackie since she began her residency at Wright State University Department of OB/GYN in July, 2016. During this time I have been a witness to her exceptional knowledge base and growing personal/professional skills. I have seen her develop from a reserved new resident joining an already established class of interns just beginning their second year into a capable and intuitive physician who has integrated seamlessly into her class while continuing to evolve and grow in the difficult environment of an OB/GYN residency. She has a unique combination of natural intelligence combined with humility, empathy, kindness, and the quest for knowledge in order to provide her patients with the most accurate and appropriate care for their situations.

Jackie has always stood out to me; not just in her class of five residents, but in my fifteen years of teaching residents from multiple medical schools and in different hospitals throughout the U.S. She is clearly well-read, as she has a broad and impressive knowledge base. Whether I am rounding on the antepartum service, staffing the high risk obstetrical service, or giving a lecture - Dr. Mares often knows the answers to my questions or already has an evidence-based plan of care in place for her patients. Due to her solid fund of knowledge, she frequently has thoughtful questions about areas of controversy; the 'grey zones'. Together we have looked up the answers to questions that she raises. This curiosity serves her well when it comes to coming up with thoughtful solutions to clinical questions where there is no clear answer.

During her first year in our program, Dr. Mares and I took care of a very ill and difficult patient. 'Ms. Doe' had a long history of substance abuse and was being cared for in the inpatient setting for complications stemming from intravenous drug use. I witnessed Jackie take ownership of Ms. Doe and treat her with amazing kindness and empathy (and also her dry sense of humor). Several more patients with similar stories ensued, which inspired Dr. Mares to put together a case series

on these patients and to initiate a relationship with an attending cardiologist who co-managed them. The three of us worked together to put a paper together which Jackie submitted for publication.

In all of my encounters with Dr. Mares, she has exhibited a commitment to her patients and a desire to practice medicine which is current and evidence-based. I have known her to challenge information that she comes across; I have always seen this as an effort on her part to understand what the situation at hand is, and to ensure that the assessment and plan being executed for a patient is the correct one. I find this to be an essential character for physicians - the continued pursuit of knowledge in the endeavor of patient care.

In summary, Dr. Jacqueline Mares is an intelligent, caring, and competent OB/GYN resident who has exhibited strength, courage, and growth in the more than two years that I have known her. I am struck by her combination of natural intelligence, curiosity, hard work, humility, and kindness towards her patients and co-workers. I am more than happy to discuss her qualifications at any time and I strongly support her reinstatement into the residency program in order to allow her to complete her training.

Sincerely,

Samantha Wiegand, MD,
Clinical Assistant Professor, Dept. of OBG, BSOM, WSU
slwiegand@premierhealth.com



Miami Valley Hospital
Premier Health Partners

The Center For Maternal-Fetal Medicine,
Ultrasound and Genetics
One Wyoming St.
Dayton, Ohio 45409-2793
(937) 208-2516
(937) 208-6124 Fax

December 12, 2018

Susan Edwards, PhD
Executive VP for Academic Affairs & Provost
University Hall 256
3640 Colonel Glenn Hwy.
Dayton, Ohio 45435-0001

Re: Jacquelyn Mares, MD

Dear Dr. Edwards:

I have had the pleasure of working with Dr. Mares as an attending physician on the Maternal Fetal Medicine Service since her arrival at Miami Valley Hospital as a second-year resident. I find her to be a very competent, compassionate, and intelligent physician. I strongly support her appeal to be reinstated as a fourth-year resident in Obstetrics and Gynecology at Wright State University.

I am well aware of the events surrounding her firing and the events that led up to it, both from personal communications with Dr. Mares and communications with persons who were involved in her defense. I had the opportunity to review the transcripts from her hearing held in front of a three-person panel, which took place on November 7, 2018.

I think that the circumstances of Dr. Mares need to be reviewed very carefully. I am certain that you now do have in your possession all the pertinent documents. There are a number of problems that are easily extracted from the evidence available. However, there are two issues that are especially egregious.

First, in my view, the judgement that was passed by Dr. Dunn to overturn the recommendation of the panel is not supportable by the available facts. If there are other facts that support her firing but were not made available to Dr. Mares and the three-person panel at the time of the hearing, then the rules of due process were grievously breached.

Second, when you review the course of events that are pertinent to this case, you will find that there were some failings on the part of Dr. Mares. However, she did show evidence of continued improvement and was functioning at a level, which was appropriate to her level of training. Firing Dr. Mares on October 4, 2018, in her fourth year of residency and essentially only two months after she was told by her program director on August 29, 2018 that she was doing well

and would be off her probation by the end of the year, is unforgivable. The only circumstance that I can imagine doing this is if Dr. Mares presented danger to her patients. There is no evidence of this being the case. Even if such evidence exists, the fact that it was not shared with Dr. Mares prior to her firing is equally unforgivable.

In summary, from the available evidence of which I am aware, the due process has failed Dr. Mares and she should be reinstated. Purely from the human standpoint, it is hard to fathom how these decisions could have been made by a "compassionate" group of people.

Sincerely,

Jiri D. Sonek, MD, RDMS
Medical Director, Maternal Fetal Medicine, Ultrasound, and Genetics Center
Clinical Professor, Wright State University Boonshoft School of Medicine



Miami Valley Hospital
Premier Health Partners

The Center For Maternal-Fetal Medicine,
Ultrasound and Genetics
One Wyoming St.
Dayton, Ohio 45409-2793
(937) 208 2516
(937) 208 6124 Fax

December 11, 2018

Susan Edwards, PhD
Executive VP for Academic Affairs & Provost
University Hall 256
3640 Colonel Glenn Hwy.
Dayton, Ohio 45435-0001

Re: Jacquelyn Mares, MD

Dear Dr. Edwards:

I am writing in support of Dr. Jackie Mares' appeal to you, for reversal of the Dean's decision to reject the recommendations of the review panel. You truly have the opportunity to change the course of an individual's life in a very positive fashion.

I realize that you have been inundated with numerous documents discussing Dr. Mares' tenure as an OB/GYN resident. As a member of the review panel, I was afforded greater than 10 hours for intense evaluation of this material. One compelling topic which was discussed at length during the panel's briefing was the issue of burnout. Unless you have had the opportunity to review the transcript of the panel's hearing, you might not see much documentation of this subject.

Almost all of Dr. Mares' dysfunctional behaviors that warranted the disciplinary actions are components of the diagnostic criteria for resident burnout. This was never considered by the residency director, clinical competency committee, or department chairman as a probable explanation for Dr. Mares' numerous problems. For this reason, appropriate steps to best help this resident were never implemented. This was attested to by the Department Chair, during the review, when Dr. Yaklic admitted, "We failed Jackie."

Dr. Mares fully acknowledged that her behaviors and communication skills were unprofessional and needed serious attention. She was never given any formal guidance in how she could improve in these areas. Nevertheless, on her own, she was able to significantly improve the scores of her medical student evaluations. This objectively supports her readiness and ability to make change. She was and she remains teachable.

From the accompanying letters of support from both faculty and Jackie's peers, it's apparent I'm not alone in my assessment of the young physician's value to our department and women's healthcare in general. It is my humble opinion that the system has truly failed this individual.

The recommendations of the review panel are not "an easy row to hoe" for Dr. Mares. Clinically, she is exceptionally competent. Her patients receive excellent care. There is little risk to the University and Department of OB/GYN to allow her to finish her residency. She has a group of dedicated faculty and peers to support her in meeting all the goals set before her.

Thank you for your time and consideration of this individual's future. Please free feel to contact me if you have any additional questions regarding Dr. Mares.

Sincerely,

Christopher S. Croom, MD
Chairman, Ethics Committee, Miami Valley Hospital
Clinical Assistant Professor, WSU, Dept. of OBG
Cell: 416-4565